UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


SAMSON MANUFACTURING CORP.   )
and SCOTT W. SAMSON,         )
Plaintiffs                   )
                             )
            v.               ) C. A. NO. 09-cv-30027-MAP
                             )
AUSTIN PRECISION PRODUCTS,   )
INC., d/b/a LARUE            )
TACTICAL,                    )
Defendant                    )


MEMORANDUM AND ORDER REGARDING
CONSTRUCTION OF PATENT CLAIMS

June 29, 2010


PONSOR, D.J.

I.  INTRODUCTION

On February 2, 2009, Plaintiffs Samson Manufacturing Corp. and Scott W. Samson brought suit against Defendant Austin Precision Products, Inc., a Texas corporation, d/b/a/ Larue Tactical.[1]  Plaintiffs allege infringement of U.S. Patent No. 7,356,152 (issued May 6, 2008) ("the '152 Patent").  (Dkt. No. 1.)  The parties have submitted briefs

---

[1] Defendants Command Arms Accessories, LLC, a Pennsylvania corporation, and TDI Arms Ltd., an Israeli corporation, were also named in the complaint but were terminated on April 14, 2009.

on the construction of the patent claims, and the task before the court now is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995).

## II. BACKGROUND

Generally, the '152 Patent describes a device for mounting firearm accessories, such as scopes and magnifiers, onto firearms.  The device comprises two clamps.  The bottom half clamps to the firearm, the top half clamps to the accessory.  The top half pivots with respect to the bottom half, permitting the user to move the accessory out of the way when it is not in use.  The challenged device has a similar function but a different appearance from the embodiment described in Figure 2a of the patent. (Dkt. No. 1, Ex. A, the '152 Patent, Sheet 2 of 6, Fig. 2a.)  In particular, the challenged device is not longitudinally symmetrical.

With the exception of two terms in Claims 4 and 5, all the terms to be construed appear in Claim 1.  With the terms to be construed underlined, Claim 1 reads as follows:

    1.   A pivoting accessory mount for use with a firearm, comprising:

    a base member having a front edge, a rear edge, a longitudinal axis extending between said front edge and said rear edge, a bottom surface and a top surface, said bottom surface configured to be mounted on an upper receiver of said firearm wherein said <u>longitudinal axis of said mounting base</u> is <u>in substantial alignment with</u> a barrel of said firearm, said top surface having supporting structure <u>extending upwardly therefrom</u>;

    a mounting shaft supported by and extending through said supporting structure, said mounting shaft having a central axis that is <u>substantially parallel to</u> said longitudinal axis;

    an accessory clamp having an upper section and a lower section, said <u>upper section including an interface for receiving and retaining a firearm accessory</u>, said <u>lower section configured to be received about said mounting shaft</u>,

    wherein said accessory clamp can be pivoted about said mounting shaft between <u>a first, inactive position</u> adjacent the firearm and <u>a second, active position</u> protruding <u>substantially vertically</u> from said firearm,

    wherein said mounting shaft is linearly displaceable along said central axis between a <u>latched position</u> and a <u>released position</u>,

    wherein said mounting shaft in said <u>latched position</u> engages said supporting structure and said accessory clamp thereby preventing said accessory clamp from pivoting relative to said base member.

(Dkt. No. 1, Ex. A, the '152 Patent, col. 8, lines 5-33.)

Claims 4 and 5 read as follows:

    4.   The pivoting accessory mount of claim 1, wherein said bottom surface of said base

        member is <u>a clamping device configured to interface with a Weaver type interface rail</u>.

5.   The pivoting accessory mount of claim 1, wherein said base member includes <u>clamping means to interface directly with the upper receiver of said firearm</u>.

(Dkt. No. 1, Ex. A, the '152 Patent, col. 8, lines 48-53.)

### III.  CLAIM CONSTRUCTION

To analyze Plaintiffs' claims, the court must determine, preliminarily, "the meaning and scope of the patent claims asserted to be infringed." <u>Markman</u>, 52 F.3d at 976. The court's interpretation of the patent claims must be based on the meaning they would have to "a person of ordinary skill in the art at the time of the invention." <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004). When construing patent claims, "the court should look first to the intrinsic evidence of record, <u>i.e.</u>, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." <u>Vitronics Corp. v. Conceptronic</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The parties have been unable to agree on the interpretation of certain words and phrases appearing in the '152 Patent. Set forth below is the court's construction of

the disputed terms.

    A.   <u>Indefiniteness</u>.

Defendant contends that Claim 1 is invalid for indefiniteness because it uses the terms "substantial" and "substantially," which are not defined in the patent. <u>See</u> 35 U.S.C. § 112 ¶ 1 ("The specification shall contain a written description of the invention . . . as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same"). No construction is required of this claim, but courts commonly rule on any asserted claim indefiniteness when they construe patent claims. <u>See</u> <u>Atmel Corp. v. Information Storage Devices, Inc.</u>, 198 F.3d 1374, 1378 (Fed. Cir. 1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.").

The term "substantially" is commonly used in patent claims to imply "'approximate' rather than 'perfect.'" <u>Playtex Prods., Inc. v. Proctor & Gamble Co.</u>, 400 F.3d 901, 907 (Fed. Cir. 2005). <u>See also</u> <u>Verve LLC v. Crane Cams, Inc.</u>, 311 F.3d 1116, 1120 (Fed. Cir. 2002). The use of the

term in the '152 Patent accords with this common usage. The court will therefore not find the claim invalid for indefiniteness.

   B.   "in substantial alignment with"

The court finds that the term "in substantial alignment with" means "at least largely parallel to."

Claim 1 provides that the "longitudinal axis of said mounting base is in substantial alignment with a barrel of said firearm." For the term, "in substantial alignment with," Plaintiff proposes the construction, "at least largely parallel to." Defendant contends that the term "in substantial alignment with" should be construed as simply "parallel with." Because the term "substantial" is commonly used to import a sense of approximation, the court is unwilling to interpret the term "substantially parallel" as simply "parallel." Accordingly, the court will adopt Plaintiff's proposed construction.

   C.   "substantially vertically"

The court finds that the term "substantially vertically" means "substantially perpendicular to the horizon."

Claim 1 provides that "said accessory clamp can be pivoted about said mounting shaft between a first, inactive position adjacent the firearm and a second, active position protruding substantially vertically from said firearm." Defendant would have the court construe the term "substantially vertically" to mean "being or situated at right angles to the horizon; upright." As a definition of "vertical," the proposal is unproblematic. However, it fails to reflect the effect of the adverb "substantially," which renders the requirement of verticality somewhat less stringent.

Plaintiff argues that neither the term "substantial" nor the term "vertical" requires construction, and the court therefore adopts its own construction, as set forth above.

D. "substantially parallel to"

The court finds that the phrase "substantially parallel to" means "largely extending in the same direction as."

Claim 1 provides for a "mounting shaft having a central axis that is substantially parallel to said longitudinal axis." Plaintiff would construe "substantially parallel to" as "largely extending in the same direction." Defendant

argues that Plaintiff's construction is too broad, that it would admit devices not aligned well enough to position a sighting device with the necessary precision. Defendant therefore proposes "extending in the same direction as the longitudinal axis of the mounting base to a degree sufficient to permit a scope mounted to the firearm by means of the pivoting scope mount to maintain and return to zero."

Defendant's proposed language would require all embodiments of the '152 Patent to be capable of mounting a precision scope. However, Claim 1 merely describes a clamping device; it does not specify the degree of precision with which a mounted accessory should function when attached to that device. Defendant's proposed language is therefore rejected as inappropriately limiting, and the court will adopt Plaintiff's proposed construction.

E. "longitudinal axis of said mounting base"

The court will construe "longitudinal axis of said mounting base" as "a line extending between the front and rear edges of the base member and perpendicular to both edges."

Claim 1 provides that the "longitudinal axis of said

mounting base is in substantial alignment with a barrel of said firearm."  Defendant would construe "longitudinal axis of said mounting base" as "the line extending the length of the mounting base along which the mounting base is symmetrical."  Plaintiff objects that the proposed definition would limit the device by imposing a symmetry requirement on the mounting base.  The claim does not require strict longitudinal symmetry, and Defendant's proposed construction is therefore too limiting.

Plaintiff does not propose any alternative language.  However, Claim 1 elsewhere describes the longitudinal axis of the base member as a line "extending between said front edge and said rear edge" of the base member.  When construing patent claims, "the court should look first to the intrinsic evidence of record, i.e., the patent itself[.]" Vitronics, 90 F.3d at 1582.  The court will therefore adopt its own construction of the term "longitudinal axis" consistent with that description, as set forth above.

    F.   "extending upwardly therefrom"

The court will construe "extending upwardly therefrom" as "rising in an upward direction from the top surface."

Claim 1 describes a "top surface" with a "supporting structure extending upwardly therefrom." Defendant would construe "extending upwardly therefrom" as "rising in an upward direction from the top surface wherein the supporting structure is symmetrical about the longitudinal axis of the mounting base." Defendant argues that the supporting structure is identified with the mounting base, which Defendant argues is subject to a requirement of longitudinal symmetry. However, the court will find that the claim does <u>not</u> impose a requirement of symmetry and will therefore reject Defendant's construction as too limiting. The court will adopt Plaintiff's proposed construction, as set forth above.

G.  <u>"upper section including an interface for receiving and retaining a firearm accessory"</u>

The court will construe "upper section including an interface for receiving and retaining a firearm accessory" as "part or portion of the accessory clamp that includes an interface for receiving and retaining a firearm accessory and which is higher in physical position than the lower section of the accessory clamp."

Claim 1 describes "an accessory clamp having an upper

section and a lower section, said upper section including an interface for receiving and retaining a firearm accessory." Defendant argues that the claim's use of the term "section" (as opposed to the word "portion") implies that the upper and lower parts of the clamp must be physically separable. For "upper section including an interface," Defendant therefore proposes "a physically separable component of the accessory clamp that cooperates with the lower section of the accessory clamp to retain a firearm accessory, that resides above the lower section when the mount is in the latched position."

Severability is not implicit in the word "section," either as a matter of common English usage or as a matter of internal consistency within the '152 Patent. The court will therefore reject Defendant's proposed construction and adopt Plaintiff's.

    H.   <u>"lower section configured to be received about said mounting shaft"</u>

For the reasons just noted, the court will construe the phrase "lower section configured to be received about said mounting shaft" as "a part or portion of the accessory clamp that receives the mounting shaft and which is physically

below the upper section."

　　I.　"latched position"

　　The court will construe "latched position" as "a position of mechanical engagement with the supporting structure."

　　Claim 1 describes a mounting shaft that is "linearly dispaceable along said central axis between a latched position and a released position." In other words, the mounting shaft slides back and forth along the barrel of the firearm. When the mounting shaft is in the latched position, the accessory clamp ceases to pivot.

　　Defendant argues that when the device is in the latched position, the accessory must be in use. For "latched position," Defendant therefore proposes, "position in which the accessory receiver is engaged such that a sighting device held by the accessory receiver would be in use." This construction would prevent the device from being locked into an inactive position. Such a device would be quite inconvenient.

　　In defense of its interpretation, Defendant notes that (1) the '152 Patent's summary uses the term "locked" or

"engaged" as synonyms to describe the action that latches the mounting base, and (2) the "engaged" / "disengaged" dichotomy is used elsewhere in the Patent to distinguish the active from the inactive position of the accessory clamp. Defendant therefore argues that a "latched" mounting base implies an "engaged" accessory clamp. But a number of different elements (including the mounting base) may be capable of being "engaged" or "disengaged" during the use of a device. This does not mean that all those features are always simultaneously engaged or simultaneously disengaged. Defendant's proposed construction will therefore be rejected.

Plaintiff does not propose any alternative language. However, it is clear from the description of the invention that the mounting shaft is in the latched position when a locking shaft or ratchet assembly makes contact with the support member. Such contact is what prevents the accessory receiver from moving linearly. See the '152 Patent, col. 6, lines 11-17. When construing patent claims, "the court should look first to the intrinsic evidence of record, i.e., the patent itself[.]" Vitronics, 90 F.3d at 1582. The court

therefore adopts its own construction consistent with such description of the latching mechanism, as set forth above.

    J.    "released position"

For the same reasons, the court will construe "released position" as "a position free from mechanical engagement with the supporting structure."

    K.    "a first, inactive position" / "a second, active position"

Defendant's memorandum suggests that Defendant intended to request a construction of the terms "first, inactive position" and "second, active position." However, Defendant has not submitted proposed language to the court, and Plaintiff convincingly argues that the terms do not require construction. Accordingly, the court will not construe these terms.

    L.    Means-Plus-Function Element (Claim 4).

Defendant argues that the "clamping device" of dependent Claim 4 and the "clamping means" of dependent Claim 5 are means-plus-function elements. Plaintiff agrees that the phrase "clamping means" in Claim 5 describes a means-plus-function element but argues that the phrase "clamping device" in Claim 4 does not.

A means-plus-function element is "an element in a claim" that is expressed "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof."  35 U.S.C. § 112, ¶ 6.  An element is presumed to be a "means plus function" element if it contains the word "means" in the description.  Reciprocally, the element is presumed not to be a means-plus-function element if it does not contain the word means.  <u>Apex Inc. v. Raritan Computer, Inc.</u>, 325 F.3d 1364, 1372 (Fed. Cir. 2003).  These presumptions are rebuttable.  Thus, the presumption that a claim does not contain a means-plus function limitation "can collapse when a limitation lacking the term 'means' nonetheless relies on functional terms rather than structure or material to describe performance of the claimed function."  <u>Id.</u>  In <u>Lighting World, Inc. v. Birchwood Lighting, Inc.</u>, the Federal Circuit noted that a claim term "recites sufficient structure to avoid application of section 112 ¶ 6" if it is "used in common parlance or by persons of skill in the pertinent art to designate structure."  This is the case "even if the term covers a broad class of structures and

even if the term identifies the structures by their function." 382 F.3d 1354, 1359-60 (Fed. Cir. 2004).

Claim 4 describes a "clamping device" for accomplishing a particular task. It does not recite the word "means," and Plaintiffs therefore enjoy the rebuttable presumption that it is not a means-plus-function element.

The facts here do not support rebutting the presumption. The noun "clamp" may cover "a broad class of structures," but it is used in common parlance to connote a certain type of device. The use of the term "clamping" therefore provides the structural specificity that a means-plus-function element would lack. Claim 4 does not describe a means-plus-function element.

M.   "Firearm" and "Firearm Accessory".

Defendant argues that the terms "firearm" and "firearm accessory" are affirmatively required by Claim 1 and that they are therefore "affirmative limitations" to Claim 1. The court will not address this issue, which is inappropriate for a claim-construction hearing. It goes to the breadth of the patent, not the meaning of any specific claim term. Neither party asks for a construction of the

word "firearm," for example, and a claim construction proceeding is not the correct context in which to address the breadth of a patent.

### IV. CONCLUSION

For the foregoing reasons, the disputed terms are construed as follows:

(1) "in substantial alignment with" means "at least largely parallel to";

(2) "substantially vertically" means "substantially perpendicular to the horizon";

(3) "substantially parallel to" means "largely extending in the same direction as";

(4) "longitudinal axis of said mounting base" means "a line extending between the front and rear edges of the base member and perpendicular to both edges";

(5) "extending upwardly therefrom" means "rising in an upward direction from the top surface";

(6) "upper section including an interface upper section including an interface for receiving and retaining a firearm accessory" means "part or portion of the accessory clamp that includes an interface for receiving and retaining a firearm accessory and which is higher in physical position than the lower section of the accessory clamp";

(7) "lower section configured to be received about said mounting shaft" means "part or portion of the accessory clamp that receives the mounting shaft and which is physically below the upper section";

(8) "latched position" means "position of mechanical

        **engagement with the supporting structure"; and**

    **(9) "released position" means "position free from mechanical engagement with the supporting structure".**

Having now received rulings construing the disputed patent claims, the parties should complete pretrial proceedings in accordance with the schedule already established.

    It is So Ordered.

                              <u>/s/ Michael A. Ponsor</u>
                              **MICHAEL A. PONSOR**
                              **U.S. District Judge**